## PRICE vs. THE OSWEGO AND SYRACUSE RAILROAD COMPANY.

Where a carrier delivers goods to a person who has assumed to purchase them of the consignor, in the name of a firm, or to some one authorized by such person, and therefore to the person or persons to whom it was intended by the consignor that they should be delivered, he is not liable to the latter for the value of the goods on the ground that there has been a misdelivery.

Where, in an action brought by the consignor, against the carrier, for the value of the goods, the claim was not that the goods were not delivered to the very party to whom they were intended to be delivered, but that such party had assumed a fictitious name, or had falsely pretended to be doing business as a copartnership, at the place where the order was dated, for the purpose of obtaining the goods without payment; *Held* that the truth or falsity of the representations should have been ascertained by the plaintiff before he parted with his property. And that the omission to do so was his negligence, and not that of the carrier.

A carrier is responsible for the delivery of the property to the party entitled to receive it, according to the address; and delivers it at the peril of being held liable for its value in case of any mistake in that particular. But if he delivers the property to the persons to whom it is addressed and to whom it was intended by the consignor that it should be delivered, the fact that the goods were obtained from the consignor by means of a fraud, and without payment of the price, will not render the carrier liable for such delivery.

Until the consignor, in such a case, shall have repudiated the sale, there can be no strictly legal right, on the part of the carrier, to withhold the property from the actual consignee, any more than though possession of it had been obtained by any other fraud; and upon tender of the freight, by the consignee, is bound to deliver the property to him.

In these days of extensive traffic, carriers could not abide the consequences of a rule which should impose upon them not only the responsibility of delivering the goods to the actual consignee, but that of determining whether the circumstances are not such as lead to a well grounded suspicion that some fraud has, by the use of fictitious names or otherwise, been perpetrated upon the consignor. *Per* TALCOTT, J.(a)

APPEAL from a judgment entered upon the report of a referee, in favor of the defendant.

*D. Pratt,* for the appellant.

I. The defendant should have been held liable for the loss of the goods, upon the simple ground of negligence

(a) See *McKean et al.* v. *McIvor et al.,* (*Law Rep., parts* 1 *and* 2, *for Jan. and Feb.* 1870,) a case very similar to the above, decided by the Court of Exchequer in England.

alone. 1. The lowest degree of care required of a bailee is ordinary care; that is, the care that a man of ordinary prudence would exercise in regard to his own property. (*Story on Bailm.* § 11.) 2. No man of ordinary prudence, under the circumstances, would intrust his own goods with a perfect stranger, without making some inquiry, or taking some proof as to his identity. 3. The defendant, ordinarily, would not do so in regard to the property of others, for it was proved to be its uniform custom not to deliver goods to a stranger without his being identified, or his proving in some manner his right to receive them. (*a.*) This custom proves the sense of the defendant itself, in regard to its duty in that respect. (*b.*) Besides, the plaintiff had a right to rely upon the defendant acting according to its usual custom. 4. Again, the referee finds expressly, that reasonable care and prudence required the defendant to take that precaution before delivering the property. (*a.*) What is reasonable care must often be a question of fact as well as of law, and the finding of the referee should be deemed conclusive. (*Story on Bailm.* § 11.) (*b.*) At all events, it should be deemed conclusive, as against the defendant in this case. 5. The defendant, therefore, having been guilty of gross negligence, in delivering the property, is liable to the plaintiff for the damages sustained by him. (*Stephenson* v. *Hart,* 4 *Bing.* 476. *Duff* v. *Budd,* 3 *Brod. & B.* 177. *Birkett* v. *Willan,* 2 *B. & A.* 356.) (*a.*) These cases are very analogous to the case at bar. (*b.*) They were attempts to swindle, similar in their circumstances, to the attempt in this case. (*c.*) It was quite manifest in both of those cases, that the property was delivered to the man who ordered it. (*d.*) Yet the court held the defendants chargeable with gross negligence, and liable for the value of the property. (*e.*) The court, in those cases, held the defendants liable, on the ground that they were negligent in the delivery of the goods. In this case, the referee has found the defendant

Price *v.* Oswego and Syracuse Railroad Company.

negligent, and its liability is therefore established within those cases.

II. The defendant is also liable for delivering the property to a party other than the party to whom it was consigned. 1. The property was consigned to the supposed firm of L. H. Wilson & Co., and if no such firm could be found, the defendant was bound to store the property, and notify the plaintiff. (*a.*) If the consignee is absent or cannot be found, it is the duty of the carrier to store the property and notify the consignor. (*Fisk* v. *Newton,* 1 *Denio,* 45.) (*b.*) The carrier is not protected in delivering the property to a wrong person, although by mistake or upon a forged order. (*Story on Bailm.* 545, *b.* *Powell* v. *Myers,* 26 *Wend.* 591.) (*c.*) It matters not how careful he is, if he delivers the property to the wrong party he is liable. He must deliver to the consignee or some one authorized to receive it. 2. In this case it is clear that the defendant did not deliver it to the consignee or any person authorized to receive it. (*a.*) It was not delivered to the consignee, for the reason that no such firm existed. So the referee finds. (*b.*) The property was not delivered to any one authorized to receive it, for the whole scheme was an attempt to swindle, and clearly the rogue was not authorized to receive it. (*Stephenson* v. *Hart; Duff* v. *Budd, supra.*) 2. It is not material that the property was delivered to the man who originally ordered it. (*a.*) In the first place there is no legal evidence that the man who received the property was the one who ordered it. (*b.*) But if it were so, it would not alter the case. (*c.*) Suppose some person had sent a forged order in the name of some well known house in Oswego, and it had been consigned to that house. Would the defendant be protected by delivering the property to the forger? (*d.*) It is submitted that the swindler who should use a fictitious name, has no greater authority than if he had forged the name of a real party. 4. In the cases above cited of *Stephenson* v. *Hart,* and *Duff* v.

*Budd,* the property was undoubtedly delivered to the swindler himself, yet the court held that no excuse. (*a.*) It was remarked by Justice Parker in the former case, that the felon is never the proper person to receive the goods. (*b.*) As the defendant is found negligent in not having the party claiming the goods identified, his liability follows as a matter of law.

III. The judgment should therefore be reversed, and a new trial granted.

*Edwin Allen,* for the respondent.

I. The declarations of the party, and what occurred, at the time the bags were called for, were properly admitted in evidence. The receipt given by the party to whom the goods were delivered was also properly admitted in evidence. These declarations, and the giving of the receipt, were a part of the *res gestœ,* and were as competent to be shown as it was to show the delivery of the goods to the person calling for them.

II. The action is brought to recover for the non-delivery of the goods in question to S. H. Wilson & Co., the consignees. As between the plaintiff and defendant, S. H. Wilson & Co. must be deemed to be the owners of the property, and before a recovery can be had here, the plaintiff must show affirmatively that no such delivery was made, and that neither S. H. Wilson & Co. nor the parties ordering them, received the goods; and until this is shown, no liability to the plaintiff is shown.

III. Any delivery which discharges the carrier, as between him and the consignee, is good as against the consignor. (*Sweet* v. *Barney,* 23 *N. Y.* 335.) In this case there is no evidence tending to show the goods were not delivered to the consignee. The goods arrived at Oswego and were delivered to the party calling for them the same day they were shipped, (according to the due course of business,) so that no time had elapsed to raise a presump-

tion of non-delivery, or to change the burden of proof on that point from the plaintiff to the defendant. The burden of establishing that issue was on the plaintiff, and has not been proven or attempted.

IV. The proof shows that the defendants are in the habit of delivering goods to consignees at the depot and at the cars, and not personally to the persons at their places of business or dwellings. And at the customary place of delivery the defendants turned over the goods to the apparent owner, with every evidence (except actual identification) that he was one of the firm, and owner of the goods. The consignee or his agent may receive goods addressed to him, in the hands of the carrier, at any place, either before or after their arrival at their place of destination, and such delivery will discharge the carrier. (11 *Metc.* 509.)

V. The question of negligence on the part of the defendants cannot arise, in this case. There is no such allegation, and no proof tending to show negligence on their part. The defendants exercised much more care and prudence in the delivery of the goods than the plaintiff did in their sale and delivery to the carrier, and he has no just ground to complain of their conduct.

VI. The goods in question were sold, and such a delivery made as would pass the title to S. H. Wilson & Co., and the defendants were only bound to retain the goods for the consignor in case the consignee could not be found. In such case (and in such case only) a new undertaking is implied, and arises on the part of the carrier to retain the goods for the consignor.

VII. The referee's finding of fact that the goods were delivered to the person who ordered them is conclusive on the issue in this case, and the judgment should be affirmed.

*By the Court,* TALCOTT, J. This is an action by the plaintiff as consignor of certain packages of bags, against the defendant as a common carrier. The complaint alleged

that the defendant received the property from the plaintiff, and agreed to transport it from Syracuse to Oswego, and there deliver it to S. H. Wilson & Co., to whom the same was addressed; and avers that the defendant did transport the same to Oswego and there deliver it to some person other than S. H. Wilson & Co., whereby the same was lost to the plaintiff. The facts are, that the plaintiff, a dealer in bags, at Syracuse, was induced by a letter signed S. H. Wilson & Co., dated at Oswego, ordering the bags, and requesting the bill to be sent by mail, promising to remit a check for the amount, to send the property, addressed to S. H. Wilson & Co., Oswego, by the defendant's road, without any other address or direction, to the defendant or otherwise, and without having any knowledge who had ordered the goods, or that there was any such firm as S. H. Wilson & Co. at Oswego or elsewhere, or making any inquiries for the purpose of ascertaining such fact. The defendant transported the bags to Oswego. On their arrival at that place, a person, whom the referee finds was the person who ordered the bags, or his authorized agent, applied for the bags as in behalf of S. H. Wilson & Co., paid the freight on the same, received them, and gave a receipt therefor in the name of S. H. Wilson & Co. The letter to the plaintiff, signed S. H. Wilson & Co., was a fraudulent contrivance to get the bags from the plaintiff, without paying for them. There was no such firm as S. H. Wilson & Co. at Oswego, or, so far as can be discovered, elsewhere. And the party to whom the bags were delivered is unknown. The referee finds that it was the usual custom of the defendant not to deliver goods to a stranger without his being identified, or his satisfying the defendant by papers or otherwise, that he was entitled to receive the same. The plaintiff drew on S. H. Wilson & Co., at Oswego, for the price of the bags, but no such firm being found, they instituted inquiries for the property, and applied to the defendant at Oswego on the subject. This

Price *v.* Oswego and Syracuse Railroad Company.

was about a month after the delivery of the bags to the unknown person, and was the first notice given to the defendant, that there was anything in the transaction out of the usual course of business. On these facts, the referee held that the defendant was not liable to the plaintiff for the value of the bags, and in this conclusion we think the referee was correct. The contrary would impose a most unreasonable burden and responsibility upon the carrier, and shift from the vendor, to the carrier, the duty of that vigilance and care, in reference to the parties to whom the vendor proposes to commit his property, which he, as the owner, is expected to take upon himself.

The carrier is responsible for the delivery of the property to the party entitled to receive it, according to the address, and delivers it at the peril of being held liable for the property in case of any mistake on this subject. Even if he deliver it on a forged order, or to the wrong person, induced by any sort of imposition upon him, he is not excused. It is for his own security, therefore, that the carrier requires to be satisfied of the identity or authority of the persons applying for the property, as no amount of care on this subject will excuse him from liability if he makes a mistake, and delivers to the wrong person.

Absolute personal identification of every individual consignee, by proof that he is the party named in the address, is not always practicable, and is sometimes impossible, from the fact that goods are often addressed by initials, or by arbitrary marks. Other means are resorted to, often, for the purpose of ascertaining whether the party applying is the party who it was intended should receive the property, such as acquaintance with the contents of the package, &c. These are precautions which the carrier takes on his own behalf, and if he makes a correct delivery he is not liable though he has taken none of these precautions; whereas, if he delivers to the wrong party, he is liable, whatever precautions he may have taken. In the case of

*Sweet* v. *Barney*, (23 *N. Y.* 335,) it was held, in accordance with the previously settled rule, that the consignee is the presumptive owner of the thing consigned, and where the carrier is not advised that any different relation exists, he is so to treat the consignee, and in the absence of any notice to the contrary, a delivery which discharges the carrier as between him and the consignee, is good against the consignor. Here the goods were delivered to the party who had assumed to purchase them in the name of S. H. Wilson & Co., or to some person authorized by that party, and therefore to the person or persons to whom it was intended by the consignor they should be delivered.

The claim is not that the goods were not delivered to the very party to whom they were intended to be delivered, but that such party had assumed a fictitious name, or had falsely pretended to be doing business as a copartnership, and to be doing business at Oswego. These things should have been ascertained by the plaintiff before he parted with his property. Not to ascertain them was his negligence, and not that of the railroad company.

Even if the defendant had known, what it did not know, that the party applying for the property did not reside in Oswego, and did not belong to any firm doing business under the name of S. H. Wilson & Co., as the plaintiff had a perfect right to consign the property in that manner, and the consignee to have it so consigned, and to receive it under that name, it is not easy to see how the defendant could refuse to deliver the property, after being satisfied that the party applying for the goods was the real party intended; unless it had also had notice that the plaintiff has been acting under mistake or imposition as to these facts. It is not an unusual occurrence that goods are intentionally forwarded to, and received by parties, without address, except arbitrary marks, or even by fictitious names. Again; how could the defendant have resisted an action to recover the property, or its value, after

a tender of the freight? The plaintiff could undoubtedly avoid the contract of sale on the ground of fraud; but this the plaintiff alone could elect to do. The defendant could not do it for him.

If the defendant had been apprised of the facts, it would probably have assumed the responsibility of detaining the property upon the assumption that the plaintiff would, when apprised of the facts, repudiate the sale. But there could be no absolute and legal certainty of this. And until the plaintiff should repudiate the sale, there could be no strictly legal right on the part of the defendant to withhold the property from the actual consignee, any more than though it had been obtained by any other fraud.

To purchase personal property with a preconceived design not to pay for it, is held to be a fraud for which the vendor may avoid the sale. Yet it is presumed no one would think of holding a railroad company who should deliver to a country merchant property consigned to him from New York, liable to the vendors for the property, no matter what notice, or reason to believe, that the consignee had purchased the property when in failing circumstances, or with a preconceived design not to pay for it, the agents of the railroad company may have had.

The counsel for the plaintiff refers us to three English cases, decided many years ago, and in regard to carriers, the extent of whose business would bear little comparison with that of a railroad company of the present day; which cases, he claims, settle the right of the plaintiff to recover in this case. They are as follows: *Duff* v. *Budd*, (3 *Brod. & Bing.* 177;) *Birkett* v. *Willan*, (2 *B. & A.* 356,) and *Stephenson* v. *Hart*, (4 *Bing.* 476.) There is considerable similarity between the facts in those cases and the one at bar. In the first two, however, it was not proved, or claimed, that the property had been in fact delivered to the party who had ordered it. In *Birkett* v. *Willan*, the court on the trial had instructed the jury that

where "a parcel was directed to a person, generally, in such a place as Exeter, without specifying his place of abode, the carrier was not bound to carry that parcel to any place, but he would fully discharge his duty by delivering it at his office, to any person coming from the person to whom it was so directed, or whom he might *reasonably suppose* to come from that person; and left it to the jury to say whether, under the circumstances proved, the defendant had *reasonable ground for thinking* that the man to whom he did deliver the parcel, came from the person to whom it was directed." And a new trial was ordered, on the authority of *Bodenham* v. *Bennett,* (4 *Price,* 31,) which holds that the carrier is not excused for misdelivery by the fact that he had reason to suppose the delivery to be correct. In *Duff* v. *Budd,* the plaintiffs had received an order for goods from Oxford, signed by J. Parker. They made inquiries, and ascertained that Mr. Parker, of High street, Oxford, was a respectable tradesman there, and forwarded the parcel by a carrier, directed to "Mr. J. Parker, High street, Oxford." The Mr. Parker who dealt in High street, Oxford, was William Parker, and he, on being applied to by the defendant's servants, knew nothing about the parcel. The servants of the defendant afterwards delivered it to a person who saw it in the office, addressed as aforesaid, and claimed that it was intended for him. There was no evidence, however, that he was the party who had ordered it, nor was it so claimed, and the decision was put principally on the ground that as the parcel was specially directed to High street, Oxford, the defendant, who had delivered it elsewhere, was liable. Of course, if it had appeared that the party to whom the parcel had been delivered was the J. Parker to whom it was directed, a different question would have been presented.

*Stephenson* v. *Hart* more nearly resembles the present case, in its features. There a person calling himself West

Price *v.* Oswego and Syracuse Railroad Company.

had, by means of a fictitious bill, with forged indorsements, purchased goods of the plaintiffs, and directed them to be sent to a certain number, Great Winchester street, London. The carrier took the box to the number indicated, and no such person could be heard of at that place. Afterwards the carrier received a letter from St. Albans, signed with the name to which the box was addressed, requesting that it might be sent to a certain inn at St. Albans, which was accordingly done. In this case, from the facts, there was little doubt but that the same party who received the goods at St. Albans was the party who had purchased the goods and passed the forged bill; and on motion for a new trial, it was, among other things, claimed that this was a material fact, and should have been left to the jury. The decision of the case was placed upon the ground that the box, instead of being delivered at its address in London, had been sent to St. Albans, contrary, as the jury found, (that question having been left to them,) to the usual course of business of the defendants.

In regard to the claim that the box was delivered to the person for whom it was intended, Park, J., who delivered the principal opinion, holds the following language: " The argument which has been raised for the defendants, by the assertion that the box has been delivered to the right person, is answered by saying that a felon cannot be the right person. And as to the defendants' liability to an action at the suit of West, till it was ascertained that the bill he had given would not be honored, such an action might have been well defended by showing that the box was tendered at Great Winchester street, and that no such person was known there." This is not very satisfactory reasoning. The remark that a felon cannot be the right person, is more rhetorical than correct. True, a felon ought not, as a question of right, as between him and his victim, to receive the property, and in that sense is not the right person; but, nevertheless, he may be the only

person who, as between him and the carrier, is entitled to receive the goods, as the learned judge seems to concede would have been the case had he appeared to receive the box when tendered at Great Winchester street. Neither is the answer to the fact that the carrier would have been liable to an action at the suit of the consignee, quite satisfactory. Of course, if nothing else had transpired except the abortive attempt to deliver at Great Winchester street, that attempt would have been a good answer to an action. But if the learned judge meant to say that the failure of the attempt to deliver at Great Winchester street would have authorized the carrier to retain the property against any subsequent demand of the consignee, the proposition is not maintainable.

Clearly, however, the case of *Stephenson* v. *Hart* does not establish the right of the plaintiff to recover in the case at bar, because it concedes that if the consignee was at the place of the address on the arrival of the property, and there received it, the carrier would not have been liable.

That was this case. The goods were directed, generally, to Oswego. The place of delivery was, on demand, at the depot of the defendant. They were there demanded and received by the party who had purchased them, and to whom they were in fact directed, though probably under a fictitious name. In these days of extensive traffic, carriers could not abide the consequences of a rule which should impose upon them, not only the responsibility of delivering the goods to the actual consignee, but that of determining whether the circumstances are not such as lead to a well grounded suspicion that some fraud has, by the use of fictitious names, or otherwise, been perpetrated upon the consignor.

The judgment must be affirmed.

[Fourth Department, General Term, at Rochester, January 2, 1871. *Mullin*, P. J., and *Johnson* and *Talcott*, Justices.]